**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JACKSON LEWIS P.C.
58 S. Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

ATTORNEYS OF RECORD:
      KATHRYN J. BARRY, ESQ.
      JENNA E. EURELL, ESQ.

----------------------------------------------------------------x

JENNIFER JOHNSON,

                    Plaintiff,

         -against-                          Case No. 22-cv-02935

MAXIMUS SERVICES LLC,                       (AMD)(JRC)

                    Defendant.

----------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**TABLE OF CONTENTS**

**Page No.:**

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...................................... 2

I.   PROCEDURAL HISTORY............................................................. 2

II.  STATEMENT OF FACTS. ............................................................ 2

    A.  Brief Background of Plaintiff's Role and Responsibilities............................... 2

    B.  Maximus' COVID-19 Safety Initiatives ................................................. 3

    C.  Plaintiff's Stated Refusal to Comply with These Safety Initiatives. .................... 3

    D.  Maximus' Decision to Suspend Plaintiff. ............................................... 6

    E.  Plaintiff's Allegations. .................................................................. 7

STANDARD OF REVIEW .......................................................................... 7

ARGUMENT ...................................................................................... 9

I.   PLAINTIFF'S DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW, AS
    PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT SHE WAS REGARDED AS
    HAVING, OR HAD A RECORD OF HAVING, A DISABILITY, OR THAT SHE WAS
    SUBJECTED TO ANY ADVERSE ACTION BECAUSE OF SAME. ................................. 9

    A.  Plaintiff's "Regarded As" Disability Claim Fails as a Matter of Law, as She Has Not
        Alleged She Was Regarded as Disabled, or That She Suffered an Adverse Action as a
        Result. .................................................................................. 10

        1.  Being Perceived as Having a "Contagious Disease" Cannot Give Rise to a "Regarded
            As" Disability Claim, nor Can Being Perceived as Unvaccinated. .......................... 11

        2.  Plaintiff Has Not Alleged Maximus Perceived Her as Disabled. .............................. 12

        3.  Even If Plaintiff Were Perceived as Disabled, Implementing Uniform Safety
            Measures in Response to the COVID-19 Pandemic Is Not an Adverse Action, or One
            That Reasonably Infers Unlawful Discrimination. ....................................... 15

            a.  Maximus' Safety Measures Were Not Adverse Actions.................................... 15

            b.  Plaintiff Has Not Alleged the Safety Measures Were Discriminatory............... 16

            c.  Plaintiff Cannot Allege Her Unpaid Leave Was Discriminatory....................... 18

    B.  Plaintiff's "Record of Disability" Claim Fails as a Matter of Law................... 20

II.  PLAINTIFF'S MEDICAL PRIVACY AND CONFIDENTIALITY CLAIMS FAIL AS A
    MATTER OF LAW............................................................................ 21

III. PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW, AS PLAINTIFF
    HAS NOT ALLEGED A CAUSAL CONNECTION BETWEEN PURPORTED
    PROTECTED ACTIVITY AND ANY EMPLOYMENT ACTION. ................................ 22

CONCLUSION.................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................8

*Barrington v. United Airlines, Inc.*,
566. F.Supp.3d 1102 (D. Colo. Oct. 14, 2021)........................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2000)................................................................................7

*Bridges v. Houston Methodist Hosp.*,
543 F.Supp.3d 525 (S.D. Tx. 2021)........................................................19

*Brown v. Oneonta*,
221 F.3d 329 (2d Cir. 2000)....................................................................17

*Bryan v. Wal-Mart Stores, Inc.*
669 F. App'x 908 (9th Cir. 2016)...........................................................19

*Burcham v. City of L.A.*,
562 F.Supp.3d 694 (C.D. Cal. 2022) ......................................................17

*Campbell v. N.Y. City Transit Auth.*
93 F.Supp.3d 148 (E.D.N.Y. 2015) ........................................................22

*Chin-Mckenzie v. Continuum Health*,
876 F.Supp.2d 270 (S.D.N.Y. 2012)........................................................15

*Darcy v. City of N.Y.*,
No. 06-cv-2246, 2011 U.S. Dist. LEXIS 23092, 2011 WL 841365 (E.D.N.Y.
Mar. 8, 2011).........................................................................................13

*Desano v. Blossom South, LLC*,
553 F.Supp.2d 247 (W.D.N.Y. 2008) ......................................................22

*Dinzey v. New York Police Dep't*,
No. 08-CV-6450, 2011 U.S. Dist. LEXIS 3286, 2011 WL 135842 (S.D.N.Y.
Jan. 11, 2011).........................................................................................7

*Dixon v. Bryson*,
No. 10-cv-00072, 2013 U.S. Dist. LEXIS 36722, 2013 WL 1137506 (S.D.
Ind. Mar. 18, 2013) ...............................................................................19

*Does v. Hochul*,
   No. 21-CV-5067, 2022 U.S. Dist. LEXIS 180025, 2022 WL 4637843
   (E.D.N.Y. Sept. 30, 2022)................................................................................5

*EEOC v. STME, LLC*,
   938 F.3d 1305 (11th Cir. 2019) .....................................................................12

*Federoff v. Geisinger Clinic*,
   571 F.Supp.3d 376 (M.D. Pa. Nov. 23, 2021) ...............................................17

*Ferraro v. New York City Dep't of Educ.*,
   404 F.Supp.3d 691 (E.D.N.Y. Sept. 30, 2017) ..............................................15

*Fraterrigo v. Akal Sec., Inc.*,
   376 F.App'x 40 (2d Cir. 2010) ......................................................................19

*Giles v. Sprouts Farmers Mkt., Inc.*,
   No. 20-CV-2131, 2021 U.S. Dist. LEXIS 97995, 2021 WL 2072379 (S.D.
   Cal. May 24, 2021) ........................................................................................15

*Giordino v. City of New York*,
   274 F.3d 740 (2d Cir. 2001) ..........................................................................10

*Guice-Mills v. Derwinski*,
   772 F.Supp. 188 (S.D.N.Y. 1991) .................................................................15

*Harris v. NYU Langone Med. Ctr.*,
   2013 U.S. Dist. LEXIS, 99328 (S.D.N.Y. July 9, 2013) ...............................13

*Hice v. Mazzella Lifting Techs., Inc.*,
   No. 21-cv-281, 2022 U.S. Dist. LEXIS 38857, 2022 WL 636640 (E.D.Va.
   Mar. 4, 2022)..................................................................................................12

*Jordan v. Forfeiture Support Assocs*,
   928 F.Supp (E.D.N.Y. 2013) .........................................................................13

*Kelly v. New York State Office of Mental Health*,
   200 F.Supp.3d 378 (E.D.N.Y. 2015) ........................................................20, 21

*Klaassen v. Trustees of Indiana Univ.*,
   7 F.4th 592 (7th Cir. 2021) ............................................................................17

*Laface v. Eastern Suffolk BOCES*,
   349 F.Supp.3d 126 (E.D.N.Y. 2018) .............................................................10

*Lovejoy-Wilson v. NOCO Motor Fule, Inc.*,
   263 F.3d 208 (2d Cir. 2001)...........................................................................22

*L.T. v. Zucker*,
    2021 U.S. Dist. LEXIS 196906 (N.D.N.Y. Oct. 13, 2021) ...................................................5

*Malachi v. Postgraduate Ctr. for Mental Health*,
    No. 10-cv-3527, 2013 U.S. Dist. LEXIS 30221, 2013 WL 782614 (E.D.N.Y.
    Mar. 1, 2013)............................................................................................................13

*Malone v. New York Pressman's Union No. 2*,
    No 07-cv-9538, 2011 U.S. Dist. LEXIS 58247, 2011 WL 2150551 (S.D.N.Y.
    May 31, 2011)...........................................................................................................18

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020)......................................................................................19

*Marecheau v. Equal Employment Practices Comm'n*,
    No. 13-cv-2440, 2014 U.S. Dist. LEXIS 139478, 2014 WL 5026142
    (S.D.N.Y. 2014)........................................................................................................10

*McDonald v. Cal. DMV*,
    No. 2:21-cv-1561, 2022 U.S. Dist. LEXIS 83471, 2022 WL 1460209 (E.D.
    Cal. May 9, 2022) ....................................................................................................16

*Metro. Stevedore Co. v. Rambo*,
    521 U.S. 121 (1997)....................................................................................................5

*Montero v. City of Yonkers, N.Y.*,
    890 F.3d 386 (2d Cir. 2008)........................................................................................8

*Morriss v. BNSF Ry. Co.*,
    817 F.3d 1104 (8th Cir. 2016) ..................................................................................12

*Natofsky v. City of New York*,
    921 F.3d 337 (2d Cir. 2019).......................................................................................23

*Norman v. Metro. Transit Auth.*,
    No. 13-CV-1183, 2014 U.S. Dist. LEXIS 130510, 2014 WL 4628823
    (E.D.N.Y. Aug. 1, 2014)..........................................................................................16

*O'Hailpin v. Hawaiian Airlines, Inc.*,
    583 F.Supp.3d 1294 (D. Haw. 2022) .......................................................................24

*Patel v. NYU Langone Hosps.*,
    2021 U.S. App. LEXIS 31275, 2021 WL 2852426 (2d Cir. 2021) ............................8

*Payne v. Woods Servs.*,
    520 F.Supp.3d 670 (E.D. Pa. 2021) .........................................................................11

*Richards v. Dep't of Educ. of N.Y.*,
  No. 21-cv-338, 2022 U.S. Dist. LEXIS 19674, 2022 WL 329226 (S.D.N.Y.
  Feb. 2, 2022) ...................................................................................................................23

*Roman v. Hertz Local Edition Corp.*,
  No. 20-CV-2462, 2022 U.S. Dist. LEXIS 88154, 2022 WL 1541865 (S.D.
  Cal. May 16, 2022) ..........................................................................................................11

*Romero v. City of New York*,
  No. 16-cv-4157, 2016 U.S. Dist. LEXIS 146160 (E.D.N.Y. Oct. 21, 2016).........................24

*Sacks v. Gandhi Eng'g, Inc.*,
  999 F.Supp.2d 629 (S.D.N.Y. 2014).................................................................................10

*Schimkewitsch v. New York Inst. of Tech.*,
  No. 19-cv-5199, 2020 U.S. Dist. LEXIS 98553, 2020 WL 3000483 (E.D.N.Y.
  June 4, 2020) ..................................................................................................................20

*Schneiker v. Fortis Ins. Co.*,
  200 F.3d 1055 (7th Cir. 2000) ........................................................................................19

*Shkylar v. Carboline Co.*,
  No. 22-cv-391, 2022 U.S. Dist. LEXIS 129546, 2022 WL 2867073 (E.D. Mo.
  July 21, 2022)............................................................................................................13, 14

*Slattery v. Swiss Reinsurance Am. Corp.*,
  248 F.3d 87 (2d Cir. 2001)..............................................................................................23

*Speaks v. Health Sys. Mgmt.*,
  No. 22-cv-00077, 2022 U.S. Dist. LEXIS 146840, 2022 WL 3448649
  (W.D.N.C. Aug. 17, 2022)....................................................................................12, 14, 23

*Thompson v. City of Tualatin*,
  No. 21-cv-01587, 2022 U.S. Dist. LEXIS 43889, 2022 WL 742682
  (D. Or. Mar. 11, 2022) ....................................................................................................11

*Together Emples. v. Mass Gen. Brigham Inc.*,
  573 F.Supp.3d 412 (D. Mass. 2021) ...........................................................................24, 25

*Valdez v. Grisham*,
  559 F.Supp.3d 1161 (D. N.M. 2021) ................................................................................17

*Vale v. Great Neck Water Pollution Control Dist.*,
  80 F.Supp.3d 426 (E.D.N.Y. 2015) ..................................................................................16

*Van Kirk v. T. Rowe Price Assocs.*,
  No. 20-cv-00062, 2020 U.S. Dist. LEXIS 126419, 2020 WL 4041304
  (E.D.N.Y. July 16, 2020) ...................................................................................................8

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) .......................................................................8

*Warner v. Delano*,
    No. 21-CV-05666, 2021 U.S. Dist. LEXIS 226881, 2021 WL 5507160 (N.D.
    Cal. Nov. 24, 2021)........................................................................ 15, 17

*We the Patriots USA, Inc. v. Hochul*,
    17 F. 4th 266 (2d Cir. 2021) ...................................................................16

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F.Supp.3d 156 (S.D.N.Y. 2015) .........................................................5

*Woolf v. Strada*,
    949 F.3d 89 (2d Cir. 2020).......................................................................9

*Yin v. N. Shore LIJ Health Sys.*,
    20 F.Supp.3d 359 (E.D.N.Y. 2014) .........................................................22

**Statutes**

42 U.S.C. § 12102............................................................................9, 10, 11

42 U.S.C. § 12112............................................................................19

Americans with Disabilities Act ("ADA") ........................................... *passim*

**Other Authorities**

29 C.F.R. § 1630.2 ...........................................................................12, 20

29 C.F.R. § 1630.15 ..........................................................................20

Federal Rules of Civil Procedure Rule 12(b)(6) .................................... *passim*

*EEOC Guidance: What You Should Know About COVID-19 and the ADA, the*
*Rehabilitation Act, and Other EEOC Laws,* available at:
https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-
rehabilitation-act-and-other-eeo-laws (last visited October 19, 2022) .........................................21

*U.S. Food & Drug Administration: Pfizer-BioNTech COVID-19 Vaccines,*
available at : https://www.fda.gov/emergency-preparedness-and-
response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccines........................5

*Vaccine Subject to an Emergency Use Authorization (July 6, 2021)*, available at:
https://www.justice.gov/olc/file/1415446/download.......................................................5

vi

Defendant Maximus Services, LLC ("Maximus") submits this Memorandum of Law in support of its motion to dismiss Plaintiff *Pro Se*'s Amended Complaint[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## **PRELIMINARY STATEMENT**

Contrary to Plaintiff's claims, this is not a "case of first impression." It is a case about whether private employers can lawfully implement safety measures to protect their workforce and members of the public from COVID-19. Numerous courts have already considered this issue and held that they can. This Court should hold the same.

Based on guidance from the Centers for Disease Control and Prevention ("CDC"), Maximus required employees to wear masks while in the office or at consumers' homes, and further required that all employees in consumer-facing (i.e., caregiving) roles either be vaccinated against COVID-19 or submit to weekly COVID-19 testing. Employees could request an accommodation if they had a medical condition or sincerely-held religious belief that prevented or otherwise affected compliance with these initiatives. Plaintiff, a Lead Nurse Evaluator who conducted in person evaluations of Medicaid participants, refused to comply with these commonsense, public health policies. She did not refuse because of any stated medical or religious reason—she refused because she believed the "company policies were not laws, and that she could not be legally compelled to partake in these practices." Ex. A, p. 457, ¶43. As a result, Maximus had no choice but to place her on an unpaid leave of absence.

Even giving her Amended Complaint every benefit of the doubt, Plaintiff has not plausibly

---

[1] Plaintiff's Amended Complaint is attached as Exhibit A to the Affirmation of Kathryn J., Barry, Esq., dated October 20, 2022 ("Barry Aff."). Plaintiff repeats paragraph numbers throughout the Amended Complaint. For ease of reference, the Amended Complaint is cited herein by reference to the ECF Page ID, and the paragraph number on that page ("Ex. A, p. __, ¶__."). Plaintiff's Affidavit in Support of the Amended Complaint (including the documents attached thereto) is attached as Exhibit B to the Barry Aff. and is cited herein as "Ex. B". It is referenced by paragraph number for Plaintiff's affidavit, and ECF Page ID for any related exhibits.

stated a claim for discrimination or retaliation under the Americans with Disabilities Act, as amended ("ADA").  She has not alleged that she was regarded as disabled or that she had a record of a disability, nor has she alleged that Maximus enacted or enforced its COVID-19 safety policies because of any purportedly protected activity.  She simply objects to Maximus' efforts to address a global pandemic.  While Plaintiff is entitled to her beliefs, she cannot use the ADA or judicial system as a platform to voice her disagreement with Maximus' lawful, responsible COVID-19 response.  For this action to proceed, she must plausibly state an actual claim.  She has not.  Thus, and for the reasons set forth more fully below, Plaintiff's Amended Complaint should be dismissed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]

### I.   PROCEDURAL HISTORY.

Plaintiff commenced this action on May 16, 2022; her Complaint purportedly alleged that Maximus discriminated and retaliated against her in violation of the ADA.  Docket Entry ("DE") 1.  Maximus moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) on August 22, 2022.  DE 15-16.   In response, Plaintiff filed an opposition to Maximus' motion, along with a motion for leave to file an amended complaint and the instant Amended Complaint.  DE 17-18.  By Order dated September 29, 2022, this Court granted Plaintiff's motion to amend without further briefing and denied Maximus' motion to dismiss as moot.

### II.   STATEMENT OF FACTS.

#### A.   Brief Background of Plaintiff's Role and Responsibilities.

Among other programs, Maximus conducts healthcare assessments of individuals

---

[2] Unless otherwise stated, this section is derived from the material allegations of the Amended Complaint and documents appended thereto.  Maximus disputes all of Plaintiff's allegations, but accepts those constituting factual allegations as true solely for purposes of this motion.  Of course, this Court need not accept Plaintiff's conclusory allegations or recitals of the elements of a cause of action as true—only allegations of fact.

("consumers") applying for Medicaid-sponsored home healthcare services in New York.  Ex. B, ¶¶11, 12, 41, 43.  In her role as a Lead Nurse Evaluator, Plaintiff evaluated consumers to assess their physical and mental health, and supervised other nurses performing similar assessments.  Ex. A. p. 452, ¶¶7-8; Ex. B, ¶¶10-12.  Although these assessments were conducted remotely at the height of the COVID-19 pandemic,  they are intended to be done in-person—according to Plaintiff, there is "no substitute for evaluating a consumer or employee in person".  Ex. A, p. 453, ¶10; Ex. B, ¶12.  In compliance with a state-issued directive to discontinue remote evaluations, Maximus resumed in-person appointments on or about August 16, 2021.  Ex. B, ¶33.  On or around August 10, 2021, Plaintiff was informed that she would be required to resume in-person assessments by September 1, 2021.  *Id*., ¶¶13-14.

### B.     Maximus' COVID-19 Safety Initiatives

In an effort to prevent the spread of COVID-19, Maximus implemented various safety policies for employees working on site and in consumer-facing roles.  Ex. A, p. 449, ¶1; Ex. B, ¶¶24, 87.  All employees, regardless of vaccination status, were required to comply with social distancing protocols and wear masks while on Company, client or consumer premises.  *Id*. Moreover, "consumer-facing healthcare staff"—like Plaintiff—were required to either be vaccinated, or undergo weekly COVID-19 testing.  Ex. B, ¶24.  To ensure compliance with this policy, employees were required to register with Clear2Work (what Plaintiff characterizes as "a digital tracking system," but was actually an "application/questionnaire [that must be completed] prior to meeting with consumer's [*sic*] in-person or reporting to an office"), and either upload proof of vaccination to Clear2Work or submit to weekly testing.  *Id.* ¶¶16, 41.

### C.     Plaintiff's Stated Refusal to Comply with These Safety Initiatives.

Plaintiff was notified of the vaccination or testing requirement on or around August 12, 2021.  Ex. A, p. 453, ¶13; Ex. B, p. 579-581.  On August 18, 2021, Plaintiff emailed Jennifer

Herrera—Maximus' Director, Human Resources—a series of "questions" about the requirement,

including whether Maximus could:

> advise me of the approved legal status of vaccines, Coronavirus testing, and if they are experimental . . .  confirm that the vaccine you are advocating is NOT 'experimental mRNA gene altering therapy' . . . confirm that I will not be under any duress from yourselves as my employers, in compliance with the Nuremberg Code . . . [and] provide details and assurances that masks are highly effective at preventing the spread of airborne diseases and that the health benefits to wearing a mask for prolonged periods of time outweigh the health risks . . . .

Ex. B, p. 586-588.

> She went on to state that:

> Once I have received the above information in full and I am satisfied that there is no threat to my health, I will be happy to either accept the vaccine, continue to wear a mask and/or be tested as indicated, but with certain conditions – namely that: 1. You confirm I will suffer no harm. 2. Following acceptance of this, the offer must be signed by a fully qualified doctor who will take full legal and financial responsibility for any injuries occurring to myself, and/or from any interactions by authorized personnel regarding these procedures.  If I should have to decline the offer of vaccination and Coronavirus testing because the health risks outweigh the benefits, please confirm that it will not compromise my position, I will not suffer any prejudice, discrimination or retaliatory disciplinary action and that I will not endure any more pressure to follow these mandates/guidelines.  I would also advise that my inalienable rights are reserved.

*Id*.  Plaintiff did not state that she believed Maximus' requirements were discriminatory, nor did she request an accommodation from these safety measures.  *Id*.

Plaintiff and Ms. Herrera spoke on August 27, 2021.  Ex. B, ¶37.  During this conversation, Plaintiff stated that she would not participate in Clear2Work and would not agree to be tested or vaccinated.  Ex. B, ¶37.  Ms. Herrera informed Plaintiff, both during this conversation and in a subsequent email dated August 30, 2021, that Plaintiff could not conduct in-person assessments unless she complied with these safety policies.  Ex. B, ¶37, p. 660-661.  Ms. Herrera encouraged

Plaintiff to "take [until September 3, 2021] to consider" whether she would do so.  *Id.*  Instead,

Plaintiff responded later that day, reiterating her objection to Maximus' safety policies and stating,

*inter alia*:

> I should be legally able to refuse EUA mitigation measures without facing any negative consequences, as this is the law. It doesn't seem to me that you are comfortable or familiar in dealing with ADA (Americans with Disabilities Act) and Civil Rights issues. In light of this, I would like to speak to the company's designated employee that deals with ADA matters.  It is my understanding that it is required by law that each company have an ADA specialist who handles ADA disputes and grievances.

Ex. B, p. 644-655.[3]  Ms. Herrera responded on September 2, 2021, reminding Plaintiff that she

could "request an exemption from vaccination if there are religious or medical reasons to do so"

by contacting the Maximus Accommodations & Leave Team (MALT).  *Id.*, p. 664-668

(referencing an "earlier email" regarding accommodations).  Ms. Herrera again asked Plaintiff to

notify Maximus as to whether she would comply with these requirements by September 3, 2021.

Plaintiff would not.  She did not assert any medical or religious basis for her refusal, nor did she

request an accommodation. Rather, she wrote that:

> As I have stated in previous communication with you, I am legally not obligated to participate in Clear To Work (the tracking system that you were supposed to have sent me additional information on),

---

[3] To the extent Plaintiff bases any of her claims on whether the COVID-19 vaccines were under an Emergency Use Authorization ("EUA"), such arguments are without merit.  The Department of Justice issued an opinion stating that the vaccines' EUA status does not prohibit public or private entities from imposing a mandatory vaccination policy. *U.S. Dept. of Justice, 45 Op. O.L.C.   ,Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring use of a Vaccine Subject to an Emergency Use Authorization (July 6, 2021)*, available at: https://www.justice.gov/olc/file/1415446/download (last visited October 18, 2022).  The opinion or guidance of a government entity can be persuasive on courts, as agency interpretations can carry "at least some added persuasive force". *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 136 (1997).  Regardless, the FDA approved the Pfizer-BioNTech COVID-19 vaccine on August 23, 2021, *U.S. Food & Drug Administration: Pfizer-BioNTech COVID-19 Vaccines*, available at : https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccines (last visited October 19, 2022), and the Court should take judicial notice of this fact, as "[w]hen considering a motion made pursuant to Rule 12(b)(6), the Court may take judicial notice of 'documents retrieved from official government websites'".  *Does v. Hochul*, No. 21-cv-5067 (AMD)(TAM), 2022 U.S. Dist. LEXIS 180025, 2022 WL 4637843, at *1 n.1 (E.D.N.Y. Sept. 30, 2022) (Donnelly, J.) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 166 (S.D.N.Y. 2015)).  "Moreover, the Court may take judicial notice of facts regarding COVID-19." *Does*, 2022 U.S. Dist. LEXIS 180025 at *1 n.1 (citing *L.T. v. Zucker*, No. 21-cv-1034, 2021 U.S. Dist. LEXIS 196906, 2021 WL 4775215, at *1 n.3 (N.D.N.Y. Oct. 13, 2021)).

Covid testing or vaccination as they are all EUA (Emergency Use Authorization) measures.  CDC Guidance, NY State mandates and company policies are not laws, and therefore, I cannot be legally compelled to partake in these practices.

*Id.*, p. 669-674.

### D.   **Maximus' Decision to Suspend Plaintiff.**

On September 1, 2021, Maximus notified Plaintiff and her "Team" that it would be "block[ing]" the schedules of those employees who could not conduct in-person evaluations.  Ex. B, ¶42.  Given her refusal to register with Clear2Work and provide proof of vaccination or submit to weekly testing, Plaintiff could not perform in-person evaluations, and her schedule was modified.  *Id.*, ¶45, p.675.  Ultimately, as remote evaluations were discontinued, Maximus placed Plaintiff on an unpaid leave of absence on September 13, 2021.  *Id.* ¶¶48, 54.  Ms. Herrera advised Plaintiff of Maximus' decision in a September 17, 2021, email to Plaintiff, writing:

> This past Monday we discussed that we would need to suspend your position with CFEEC, due to your resistance to register for and use Clear2Work health screenings prior to conducting face-to-face assessments.  We also discussed the requirement that unvaccinated staff will be required to undergo weekly testing.  The suspension period allows time to see if there will be any relevant policy changes, as we're in a rapidly changing environment.  It also allows you time to consult with a health professional on the numerous questions you previously posed to me.

Ex. B, p. 686.  Maximus reiterated its position to Plaintiff on October 11, 2021, reminding her that it "ha[d] not terminated your employment.  You remain employed by the Company.  You are, however, on an unpaid leave of absence, as you have not agreed to comply with company policy to use the Clear2Work health screening app, or provided Maximus with proof of vaccination against COVID-19 or your agreement to be tested weekly as an unvaccinated staff member." *Id.*, p. 394.  Maximus informed Plaintiff that she would "remain on unpaid leave until she agreed to comply with the company's policy." Ex. A, p. 458, ¶58.

E.     **Plaintiff's Allegations.**

Against this background, Plaintiff alleges that she was discriminated against because she was "regarded as" having a disability or had a record of a disability, and retaliated against for engaging in protected activity.  Ex. A. p. 450, ¶6; p. 470, ¶142; Ex. B ¶¶2, 36, 48, 51, 54.   As we understand, Plaintiff alleges Maximus unlawfully required her to comply with its safety policies, and, when she refused, "blocked" her schedule and placed her on an unpaid leave of absence.  Ex. A. p. 456, ¶39; p. 458, ¶¶51-57. She claims this violated the ADA, despite acknowledging that Maximus applied its safety protocols "equally" to all employees, despite Maximus implementing these policies well before Plaintiff objected to same, and despite its repeated assurances that Plaintiff could return to work if she complied.  And she does so without alleging she suffers from a disability,[4] without alleging any facts to suggest Maximus perceived her as disabled, and without alleging any adverse action connected to an actual or perceived disability or purported protected activity.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2000)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[4] In her affidavit, Plaintiff alleges that she has "a disability which precludes me from wearing a face covering for medical reasons and for reasons of self-care, breathing, and communication.  I have been diagnosed with conditions that contra-indicate wearing a mask or limiting my oxygen or re-breathing my expelled bacteria."  Ex. B, ¶9.  She does not allege what the condition is, or whether she advised Maximus of same.  Regardless, this is unrelated to the vaccination or testing mandate, or any purported adverse action.  Moreover, she states specifically that she is proceeding under the "record of" and "regarded as" prongs of the ADA only.  Ex. A, p. 459, ¶62.  To the extent Plaintiff intends to pursue an actual disability claim, she cannot, as she has not alleged what the purported disability was, or whether she made Maximus aware of same.  *Dinzey v. New York Police Dep't*, No. 08-cv6450, 2011 U.S. Dist. LEXIS 3286, 2011 WL 135842, at **7-8 (S.D.N.Y. Jan. 11, 2011) (granting motion to dismiss ADA discrimination claim where the plaintiff failed to identify a disability or allege that the defendant was aware of any disability).

inference that the defendant is liable for the misconduct alleged." *Id.*  Thus, a plaintiff must plead facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief " is "a context-specific task" that requires a court "to draw on its judicial experience and common sense." *Id.*  In the employment discrimination context, a plaintiff must "plausibly allege facts that give rise to an inference of unlawful conduct." *Patel v. NYU Langone Hosps.*, 2021 U.S. App. LEXIS 31275, 2021 WL 2852426, at *3 (2d Cir. 2021) (summary order) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

On a motion to dismiss, a court "accepts as true all well-pleaded factual allegations and draws all reasonable inference in favor of the plaintiff." *Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 391 (2d Cir. 2008).  And, while *pro se* complaints are held to a less stringent standard, "a court 'need not argue a *pro se* litigant's case nor create a case for the *pro se* [litigant] which does not exist.'" *Van Kirk v. T. Rowe Price Assocs.*, No. 20-CV-00062 (AMD), 2020 U.S. Dist. LEXIS 126419, 2020 WL 4041304, at *3 (E.D.N.Y. July 16, 2020) (Donnelly, J.) (brackets in original) (quoting *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-cv-3527, 2013 U.S. Dist. LEXIS 30221, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (additional citations omitted)).  Thus, and as with any case, "'[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim.'"  *Van Kirk*, 2020 U.S. Dist. LEXIS 126419, at *3.  As Plaintiff has not satisfied her pleading requirements, her Amended Complaint should be dismissed.

**ARGUMENT**

I. **PLAINTIFF'S DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW, AS PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT SHE WAS REGARDED AS HAVING, OR HAD A RECORD OF HAVING, A DISABILITY, OR THAT SHE WAS SUBJECTED TO ANY ADVERSE ACTION BECAUSE OF SAME.**

"To support an inference of disability discrimination, [Plaintiff] needs to plausibly allege that: '(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3)[s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4)[s]he suffered adverse employment action because of [her] disability.'" *Patel*, 2021 U.S. App. LEXIS 31275, at *5 (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (per curiam)).

Plaintiff fails at steps two, as she cannot show she was disabled as defined by the ADA. The ADA defines a disabled person as an individual with "a physical or mental impairment that substantially limits one or more of that person's major life activities", an individual who has "a record of such an impairment" or an individual who is "regarded as having such an impairment." 42 U.S.C. § 12102(1).  While Plaintiff asserts generally that she qualifies under the "regarded as" and "record of" prongs, her assertions are largely contradictory and wholly insufficient to defeat a motion to dismiss.[5]  She identifies no disability, nor alleges any facts even suggesting that Maximus "regarded" her as disabled.  Even if she did, she has not alleged that she was subjected to an adverse action because of her purported disability.  Thus, she has not plausibly alleged an "inference of unlawful conduct," and her claim must be dismissed.  *Patel*, 2021 U.S. App. LEXIS 31275, at *3.

___

[5] Ex. A, p. 455, ¶32 (Defendant was "making a record" of Plaintiff's disability by misclassifying Plaintiff); p. 459, ¶62 ("the plaintiff is proceeding under both the 'regarded as' and the 'record of' prongs of the ADA"); p. 452, ¶18 (alleging Plaintiff was perceived as having a disability); p. 462, ¶¶85, 87 (alleging Plaintiff was regarded as having a disability).  *See also* Ex. B, ¶8 ("I have previously and timely disclosed and duly noticed the defendant of a prior existing disability"), ¶9 ("I have been regarded as having a disability and I have a disability").

As the majority of Plaintiff's allegations relate to her "regarded as" claim, we begin our analysis there.

A.   **Plaintiff's "Regarded As" Disability Claim Fails as a Matter of Law, as She Has Not Alleged She Was Regarded as Disabled, or That She Suffered an Adverse Action as a Result.**

A person is "regarded as having" a disability if they establish that they have been "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Laface v. Eastern Suffolk BOCES*, 349 F.Supp.3d 126, (E.D.N.Y. 2018). "[I]mpairments that are transitory and minor," however, cannot give rise to a regarded as disability claim. 42 U.S.C. § 12102(3). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.*

"When a Plaintiff brings a claim on the basis that his employer regarded him as disabled, 'the decisive issue is the employer's perception of his or her employee's alleged impairment.'" *Sacks v. Gandhi Eng'g, Inc.*, 999 F.Supp.2d 629, 633 (S.D.N.Y. 2014) (quoting *Giordino v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001)); *Marecheau v. Equal Employment Practices Comm'n*, No. 13-cv-2440, 2014 U.S. Dist. LEXIS 139478, 2014 WL 5026142, at *16 (S.D.N.Y. 2014). Thus, to plead a regarded as disability claim, Plaintiff must allege that Maximus *actually* perceived her as having an impairment that was not minor and transitory in nature. *Marecheau*, 2014 U.S. Dist. LEXIS 139478, at *16. She did not. Instead, Plaintiff alleges—in conclusory fashion—that Maximus "regarded" Plaintiff, along with all other unvaccinated employees, as either being disabled with a "contagious disease" (COVID-19) or "'as if they had an impaired or suppressed immune system that made them prone to contracting 'Covid-19'." Ex. A, p. 450, ¶6, p. 462, ¶87; p. 467, ¶118. This is insufficient, as a matter of law.

1.      **Being Perceived as Having a "Contagious Disease" Cannot Give Rise to a "Regarded As" Disability Claim, nor Can Being Perceived as Unvaccinated.**

As an initial matter, federal courts have held that COVID-19 cannot give rise to a "regarded as" disability claim, as "[t]he vast majority of cases of COVID-19 last fewer than 20 days . . . Thus, being perceived as having COVID-19 is not a cognizable disability under the ADA." *Thompson v. City of Tualatin*, No. 3:21-cv-01587, 2022 U.S. Dist. LEXIS 43889, 2022 WL 742682, at *6 (D. Or. Mar. 11, 2022) (citing Ctrs for Disease Control & Prevention, *Ending Isolation and Precautions for People with COVID-19: Interim Guidance*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last updated Jan. 14, 2022)).[6]

To the extent Plaintiff claims that Defendant perceived her as unvaccinated, vaccination status is not a "physical or mental impairment."  As defined by the EEOC's implementing regulations, a physical or mental impairment means:

> (1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as a neurological, Musculo keletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

---

[6] *Thompson*, 2022 U.S. Dist. LEXIS 43889, at *6 (dismissing with prejudice ADA "regarded as" claim due to having COVID-19 because "employees cannot bring claims for being regarded as having an impairment that is 'transitory and minor', meaning 'an impairment with an actual or expected duration of 6 months or less") (quoting 42 U.S.C. § 12102(3)(B)).  This is because "[t]he federal courts mostly agree that a short-term COVID-19 infection does not qualify as an ADA disability." *Roman v. Hertz Local Edition Corp.*, No. 20-cv-2462-BEN (AGS), 2022 U.S. Dist. LEXIS 88154, 2022 WL 1541865, at *20 (S.D. Cal. May 16, 2022) (listing cases, noting that the EEOC's ADA technical assistance manuals also "recently clarified that an individual infected with COVID-19 who has 'mild symptoms...that resolve in a matter of weeks with no other consequences . . . will not be substantially limited in a major life activity for purposes of the ADA'" and "that if this type of infection forces an individual to isolate according to CDC guidelines, the infection is not considered a disability.") (citation omitted); *Payne v. Woods Servs.*, 520 F.Supp.3d 670, 679 (E.D. Pa. 2021) (a COVID-19 infection, without limitations stemming from the infection, does not qualify as an impairment under the ADA).

29 C.F.R. § 1630.2(h).  Being unvaccinated is not a condition, disfigurement, loss, or disorder.  It is a "personal *choice* by [Plaintiff] that, while hers to make in this context, cannot be considered an impairment under the ADA."  *Speaks v. Health Sys. Mgmt.*, No. 22-cv-00077, 2022 U.S. Dist. LEXIS 146840, 2022 WL 3448649, at *13 (W.D.N.C. Aug. 17, 2022) (dismissing regarded as disability claim where plaintiff was terminated for failing to comply with vaccine mandate).[7]

Nor can the risk of *future* COVID-19 (whether exacerbated by a decision not to be vaccinated or not) give rise to a regarded as disability claim, as the ADA "'does not cover this case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future.'"  *Hice v. Mazzella Lifting Techs., Inc.*, No. 21-cv-281, 2022 U.S. Dist. LEXIS 38857, 2022 WL 636640, at **17-18 (E.D.Va. Mar. 4, 2022) (concern that employee was "overly susceptible to the COVID-19 virus" does not give rise to a regarded as disability claim) (quoting *EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019)); *see also Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1114 (8th Cir. 2016) ("[t]he ADA does not prohibit discrimination based on a perception that a physical characteristic—as opposed to a physical impairment—may eventually lead to a physical impairment as defined under the Act.").

### 2.    Plaintiff Has Not Alleged Maximus Perceived Her as Disabled.

Regardless, even if being unvaccinated or having or being at risk of COVID-19 were considered disabilities under the ADA, Plaintiff fails to allege that Maximus perceived *her* as disabled.[8]  She alleges that Maximus implemented safety policies applicable to all consumer facing healthcare staff; informed her that she (like all other covered employees) had to comply with same;

---

[7] Plaintiff does not allege that she ever informed Maximus that she could not receive the vaccine because of a mental or physical condition, and does not allege that Maximus ever believed that Plaintiff had an impairment preventing vaccination.  She alleges only that she was "classified" as being "unvaccinated".  Ex. B, ¶16.

[8] Plaintiff claims, falsely, that "[i]t is not necessary to allege that the defendant's agents personally regarded the plaintiff as having a disability".  Ex. A, p. 462, ¶88.  It is.

and took action based on her refusal to do so.  She has pleaded no facts from which one could infer that Maximus ever perceived her to be diagnosed with COVID-19, prone to COVID-19 or unvaccinated—only that it considered her to be out of compliance with its Company-wide safety policy.[9]

To the contrary, Plaintiff claims that "the defendant's policy rested on the assumption that every employee, the plaintiff included, had or could have this disease.  That is, the policy's underlying assumption was that all of its employees were simultaneously at risk and also posed a risk to the health of all other employees."  Ex. A, p. 462, ¶87.  These conclusory assertions are similar to those set forth in an amended complaint recently dismissed by the Eastern District of Missouri.  *See Shkylar v. Carboline Co.*, No. 4:22-cv-391, 2022 U.S. Dist. LEXIS 129546, 2022 WL 2867073 (E.D. Mo. July 21, 2022). There, the plaintiff alleged she was "perceived as disabled with a contagious disease" and/or "having an impaired immune system"; that her employer "made a record of such disability" and required her to use "mitigation measures to perform several major life activities in the workplace"; that she was "not allowed to work because of [her employer's] discriminatory [COVID-19 safety measures]" and that these policies "harassed, isolated, segregated, limited, classified, denied equal access, and imposed non-job-related medical examinations and inquiries upon her."  *Id.* at **1-3, 6-7. [10]

---

[9] Plaintiff does not, for example, allege that she was offered a medical leave of absence, or that Maximus made any comments about her inability to perform certain tasks, health or wellbeing.  *Cf. Jordan v. Forfeiture Support Assocs*, 928 F.Supp,2d 588, 606-07 (E.D.N.Y. 2013) (plaintiff sufficiently alleged defendant regarded her as disabled by claiming defendant granted her a leave of absence after a medical diagnosis and during the leave told her that she "should have taken disability leave"); *Darcy v. City of N.Y.*, No. 06-cv-2246, 2011 U.S. Dist. LEXIS 23092, 2011 WL 841365, at *4 (E.D.N.Y. Mar. 8, 2011) ("a rational jury could find that plaintiff was regarded as having an impairment … where in a remark to plaintiff, defendant implied that plaintiff suffered from alcoholism); *Harris v. NYU Langone Med. Ctr.*, No. 12-cv-0454, 2013 U.S. Dist. LEXIS, 99328, 2013 WL 3487032, at *63-64 (S.D.N.Y. July 9, 2013) (claim that employer sent plaintiff an application for disability leave and an email "indicating that [the employer] thought [plaintiff] 'had problems'" sufficient for pleading purposes).

[10] Plaintiff's Complaint contained these allegations verbatim.  Her Amended Complaint simply rewords them.  Ex. A, p. 451, ¶¶11-12; p. 452, ¶¶18-19; p. 454, ¶17; p.455, ¶32; p. 456, ¶33; p. 459, ¶65; p. 462, ¶¶89-91; p. 467, ¶120; p. 468, ¶131; p. 471, ¶¶147-48.

Critically, and like here, the COVID-19 policies at issue in *Shkylar* were "generally applicable to all of [its] … employees." *Id.* at **10, 12. This proved fatal to the regarded-as disability claim. As the court in *Shkylar* held:

> Shkylar nevertheless alleges that, by implementing its COVID-19 policies and requiring that she comply with them, Carboline regarded her as having the disability of a contagious disease and as being substantially limited with impaired immune and respiratory systems. This conclusory allegation is simply implausible in light of the general applicability of Carboline's COVID-19 policies. As with Shklyar's allegation that Carboline misclassified her as having a disability, to infer that Carboline regarded her as having a disability would require inferring that Carboline regarded all of its RD&I employees as having a disability. This too is not a reasonable inference. Accordingly, Shklyar has also not plausibly alleged that Carboline regarded her as having a disability.

*Id*. at **12-13. The Western District of North Carolina came to the same conclusion in a similar case, holding that "inferring that the Company classified [the plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [the defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference". *Speaks*, 2022 U.S. Dist. LEXIS 146840, at *13.

The same analysis applies here. Plaintiff claims Maximus required her to comply with its COVID-19 safety measures because it believed she was disabled. Given the widespread knowledge of the COVID-19 pandemic, this claim on its face is meritless. But even ignoring this common-sense understanding of the pandemic, Plaintiff explicitly concedes that Maximus implemented these protocols because of CDC guidelines and in effort to prevent the spread of COVID-19 and that it applied these policies *equally* to all consumer-facing healthcare staff. Ex. A, p. 449, ¶1; p. 468, ¶126; p. 462, ¶87; Ex B. ¶12. These allegations cannot coexist—Plaintiff cannot claim that Maximus acted because it perceived her to be disabled, while also acknowledging that Maximus acted for reasons entirely unrelated to her or her perceived medical condition. Like in *Shkylar*, this destroys her claim. *Shkylar*, 2022 U.S. Dist. LEXIS, at *11-13.

14

**3.      Even If Plaintiff Were Perceived as Disabled, Implementing Uniform Safety Measures in Response to the COVID-19 Pandemic Is Not an Adverse Action, or One That Reasonably Infers Unlawful Discrimination.**

a.      Maximus' Safety Measures Were Not Adverse Actions.

Plaintiff alleges that because Maximus perceived her to have COVID-19 and/or be unvaccinated, it "sought to impose" the "COVID-19 Policy" on her.  Ex. A, p. 452, ¶17; p. 462, ¶88.  Such policy, Plaintiff claims, was "discriminatory" and an adverse employment action that "substantially impair[ed] her ability to perform her essential employment duties."  Ex. A, p. 465, ¶104; p. 470, ¶141; p. 472, ¶¶156-57.[11]

Even assuming Plaintiff had adequately alleged that she was regarded-as disabled, her claim still fails as requiring Plaintiff to comply with these policies and procedures is not an actionable adverse action.  Policies based on the nature of job duties and applicable to all employees with those duties are not adverse.  *See Guice-Mills v. Derwinski*, 772 F.Supp. 188, 196 (S.D.N.Y. 1991).  Nor are policies that are safety driven and implemented to protect individuals from pandemics, epidemics or other emergency situations.  *See Ferraro v. New York City Dep't of Educ.*, 404 F.Supp.3d 691, 711 (E.D.N.Y. Sept. 30, 2017) (referring plaintiff to a medical exam out of concern about the safety of others after an emergency situation not an adverse employment action). [12]  To that end, courts have rejected claims much like Plaintiff's, which attempt to assert that COVID-19 mitigation efforts implemented by employers were somehow discriminatory or

---

[11] As we understand, the "COVID-19 Policy" refers to the safety measures implemented in response to the COVID-19 pandemic—Maximus' requirement that consumer-facing employees wear masks, complete a screening questionnaire, and either be vaccinated for COVID-19 or tested weekly.

[12] *See also Chin-Mckenzie v. Continuum Health*, 876 F.Supp.2d 270, 286, 288 (S.D.N.Y. 2012) (requiring employees to receive vaccine in response to swine flu epidemic not an adverse employment action); *Warner v. Delano*, No. 21-cv-05666, 2021 U.S. Dist. LEXIS 226881, 2021 WL 5507160, at *2 (N.D. Cal. Nov. 24, 2021) ("the ADA does not provide a blanket exemption to people with disabilities from complying with legitimate safety requirements necessary for safe operations"); *Giles v. Sprouts Farmers Mkt., Inc.*, No. 20-cv-2131, 2021 U.S. Dist. LEXIS 97995, 2021 WL 2072379, at *6 (S.D. Cal. May 24, 2021) (masking policy not discriminatory under Title III of ADA).

adverse employment actions. *See, e.g.*, *McDonald v. Cal. DMV*, No. 2:21-cv-1561, 2022 U.S. Dist. LEXIS 83471, 2022 WL 1460209, at *7 (E.D. Cal. May 9, 2022) (employer's COVID-19 masking policy and promotion of COVID-19 vaccine not discriminatory or an adverse employment action). And, while analyzed in the religious (not medical) discrimination context, the Second Circuit has held that vaccination mandates do not run afoul of federal employment discrimination law, provided they allow for reasonable accommodation (which, as Plaintiff acknowledges, Maximus did). *We the Patriots USA, Inc. v. Hochul*, 17 F. 4th 266, 292 (2d Cir. 2021).

Even without the breadth of caselaw rejecting claims like those here, Plaintiff does not allege how the "COVID-19 Policy"—as opposed to her refusal to comply with it—resulted in any "materially adverse change" to the terms and conditions of her employment, as required under the ADA. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F.Supp.3d 426, 434 (E.D.N.Y. 2015) (adverse employment actions under the ADA are "materially adverse" changes in the terms and conditions of employment such as termination; demotion; salary decrease or loss of benefits). It is not enough to allege that Maximus' COVID-19 safety measures impaired her ability to perform her essential job duties, without at minimum identifying which job duties were impaired and how they were impaired, is insufficient. *Norman v. Metro. Transit Auth.*, No. 13-cv-1183 (KAM)(JO), 2014 U.S. Dist. LEXIS 130510, 2014 WL 4628823, at *18 (E.D.N.Y. Aug. 1, 2014) (the plaintiff's allegation that "the 'defendants acted in a way that adversely affect[ed] his job status and which constitute adverse employment actions,' is the type of conclusory statement that cannot defeat an otherwise meritorious motion to dismiss.") (brackets in original).

> b.  Plaintiff Has Not Alleged the Safety Measures Were Discriminatory.

Regardless, assuming the policies themselves were adverse actions (and they were not), Plaintiff has not alleged facts sufficient to support a claim that they were discriminatory. As the

16

Second Circuit noted, a plaintiff can plead intentional discrimination by alleging an expressly discriminatory policy, or "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner.  A plaintiff could also allege that a facially neutral statue or policy has an adverse effect and that it was motivated by discriminatory animus." *Brown v. Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).  Plaintiff has not alleged any of the above.

By emphasizing that "[t]he defendant's 'COVID-19 policy' imposed these measures upon all of its workers",[13] Plaintiff concedes that Maximus did not apply the COVID-19 safety measures differently to Plaintiff than it did to other employees.  While she claims "the defendant's COVID-19 Policy [was] applied in a discriminatory fashion by identifying distinct groups of employees, such as those who are 'vaccinated' and those who are 'unvaccinated' and treating them differently[,]"  Ex. A, p. 461, ¶81, this is not discriminatory under the ADA, as—again—vaccination is a choice, not a disability.  *See* Point I(A)(1), *supra*.

Nor does Plaintiff plead any allegations of fact that could allow this Court to plausibly conclude Maximus acted out of discriminatory animus, or implemented these policies because of Plaintiff's (or anyone else's) perceived disability.  To the contrary, the only allegation is that Maximus acted, consistent with CDC guidance, to ensure the safety of its workforce and consumers as a whole.  This is consistent with other courts that have recognized that COVID-19 vaccine or test requirements are intended to protect against the spread of COVID-19 *generally* and are unrelated to a particular individual's medical condition.[14]  In other words, courts acknowledge

---

[13] Ex. A, p. 450, ¶2 (emphasis in original).

[14] *See, e.g., Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592 (7th Cir. 2021); *McDonald*, 2022 U.S. Dist. LEXIS 83471 at *7-9; *Burcham v. City of L.A.*, 562 F.Supp.3d 694 (C.D. Cal. 2022); *Valdez v. Grisham*, 559 F.Supp.3d 1161 (D. N.M. 2021); *Warner v. Delano*, 2021 U.S. Dist. LEXIS, at *2; *see also Federoff v. Geisinger Clinic*, 571 F.Supp.3d 376, 388 (M.D. Pa. Nov. 23, 2021) (it is an undue burden for employers "to harbor employees that are both unvaccinated and untested" because "an unvaccinated individual is likelier than a vaccinated individual to be the source of an infection"); *Barrington v. United Airlines, Inc.*, 566. F.Supp.3d 1102, 1109 (D. Colo. Oct. 14, 2021) (concluding "unvaccinated employees could expose co-workers to heightened risk of COVID-19 such as through 'break-through cases'" and "jeopardize[ ] the lives and health of [the plaintiff's] co-workers").

that these policies are implemented to protect employees as a whole, and not in response to any individual or group's medical status—precluding a disparate treatment claim.

        c.     Plaintiff Cannot Allege Her Unpaid Leave Was Discriminatory.

Finally, to the extent Plaintiff's Amended Complaint can be read as alleging that her schedule was modified to block her from conducting assessments, or that she was placed on an unpaid leave of absence because Maximus regarded her as having a disability,[15] she has pled no facts to suggest this was the case. Again, she alleges that the COVID-19 policies applied to all consumer-facing healthcare staff, and that she was placed on leave only after making clear to Maximus that she would not comply with same. Absent some allegation of discriminatory intent because of an actual or perceived disability (which she has not alleged) or an allegation that she requested a medical accommodation (which she did not), Plaintiff cannot state a claim for discrimination by alleging Maximus enforced its lawful and neutrally-applied policy. *Malone v. New York Pressman's Union No. 2*, No 07-cv-9538, 2011 U.S. Dist. LEXIS 58247, 2011 WL 2150551, at *19-22 (S.D.N.Y. May 31, 2011) (dismissing discrimination claim where the amended complaint contained "conclusory allegations that the … seniority system was specifically maintained … to perpetuate discrimination" and "summarily label[ed] actions … as discriminatory" but contained "no facts that demonstrate[ed] the complained-of facially neutral policies affect[ed] [certain employees] more harshly than [others]").

Plaintiff does argue that Maximus was precluded from enforcing its COVID-19 policies or taking action against her, both because the policies were unrelated to her essential functions and because Maximus did not conduct an "individualized assessment" and determine that Plaintiff was a "direct threat." Ex. A, p. 451, ¶¶11-12, 15; p. 452, ¶17; p. 464, ¶¶98-99, p. 465, ¶105; p. 466,

---

[15] Plaintiff does not reference these purported actions in Count I. Out of an abundance of caution, we will interpret her Complaint as alleging that these actions were discriminatory as well as retaliatory.

¶¶111-112; p. 471, ¶¶151-52; p. 472, ¶¶155-56.  Plaintiff misstates the relevant law.  Maximus is permitted to implement safety standards, regardless of whether those standards relate directly to an individual's essential functions.  The ADA does not impose some "essential function only" requirement—Maximus is free to implement the standards and requirements it sees fit.  "Every employment includes limits on the worker's behavior.  That is all part of the bargain."  *Bridges v. Houston Methodist Hosp.*, 543 F.Supp.3d 525, 528 (S.D. Tx. 2021) (dismissing wrongful termination claim, and noting vaccine mandate was a "choice made to keep staff, patients, and their families safer.  [Plaintiff] can freely choose to accept or refuse a COVID-19 vaccine; however, if she refuses, she will simply need to work somewhere else.").

Maximus is, of course, prohibited from "using qualification standards . . . that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities," unless the standard is job-related and consistent with business necessity.  42 U.S.C. § 12112(b)(6); *Fraterrigo v. Akal Sec., Inc.*, 376 F.App'x 40, 42 (2d Cir. 2010) (summary order).  But to allege such a disparate impact claim, Plaintiff must allege "a disability . . . and factual allegations that allow the court to draw a reasonable inference that [the COVID-19 safety measures] screen[] out or tend[] to screen out [Plaintiff] on the basis of [her] disability."  *Bryan v. Wal-Mart Stores, Inc.* 669 F. App'x 908, 910 (9th Cir. 2016) (summary order).  But Plaintiff has not alleged, nor can she, that Maximus' safety measures disparately impacted those with covered disabilities.[16]  Even

---

[16] Nor, given her steadfast refusal to admit that she was disabled and her inability to demonstrate that she or anyone else was regarded as disabled, could she.  *Schneiker v. Fortis Ins. Co.,* 200 F.3d 1055, 1062 (7th Cir. 2000) (affirming summary judgment on ADA disparate impact claim where the plaintiff was not disabled under the Act); *Dixon v. Bryson,* No. 4:10-cv-00072, 2013 U.S. Dist. LEXIS 36722, 2013 WL 1137506, at *32-33 (S.D. Ind. Mar. 18, 2013) ("A plaintiff must be a member of the protected class before he can bring a disparate impact claim.").  Regardless, to plead a disparate impact claim, Plaintiff must "set forth enough factual allegations to plausibly support" that: (1) a specific employment practice or policy; (2) a disparity between the impact of such policy on individuals in a particular group and individuals outside of that group; and (3) a causal connection between the two.  *Mandala v. NTT Data, Inc.,* 975 F.3d 202, 207-209 (2d Cir. 2020).  Plaintiffs typically rely on statistical evidence to show a disparity in outcome, and the Second Circuit recently clarified that "even at [the pleading stage], the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact."  *Id.* at 210.  Plaintiff has not met this standard.

assuming her Amended Complaint could be interpreted as containing a conclusory allegation of disparate impact, it is insufficient. *Schimkewitsch v. New York Inst. of Tech.*, No. 19-cv-5199 (GRB)(AYS), 2020 U.S. Dist. LEXIS 98553, 2020 WL 3000483, at *12 (E.D.N.Y. June 4, 2020) (dismissing discrimination claim where plaintiff "entirely failed to identify a significant disparate impact of a facially neutral policy").

As for the individualized assessment and direct threat analysis, such are relevant only if Plaintiff has stated a claim that the qualification standard itself had a disparate impact on individuals with disabilities—which she has not done.  29 C.F.R. § 1630.15(b)(2) (noting direct threat as a defense).   It is thus irrelevant to her claim.

### B.    Plaintiff's "Record of Disability" Claim Fails as a Matter of Law.

Plaintiff's allegations of discrimination based on her record of an alleged ADA-covered disability are similarly insufficient, as she does not allege that she ever had a record of an impairment that substantially limited one or more major life activities, that she was ever misclassified as having such an impairment, or that Maximus took any adverse action against her as a result.

To adequately plead a claim for disability discrimination based on a record of a disability, Plaintiff must plausibly allege that she has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment."  29 C.F.R. § 1630.2(k)(2); *Kelly v. New York State Office of Mental Health*, 200 F.Supp.3d 378, 394 (E.D.N.Y. 2015).  Here, Plaintiff alleges that she had a "record" of being unvaccinated, and/or was misclassified as being "impaired by a suppressed or weak immune system or respiratory system that makes [her] vulnerable to Covid-19."  Ex. A, p. 467, ¶118.  But, and as noted above, being unvaccinated is not an impairment, and thus cannot support an ADA claim.  *See* Point I(A)(1), *supra*.  Nor is there any allegation that

Maximus had a record of Plaintiff having an immuno- or respiratory-illness.  To the extent Plaintiff is claiming Maximus made a "record" of her having COVID-19, both the EEOC and courts have generally held that COVID-19 infection is not a disability, absent some allegation that the infection resulted in a substantial limitation of one or more major life activities.[17]  No such limitation is alleged here, and thus her claim fails as a matter of law.

Regardless, assuming there was a record of Plaintiff having a disability or being misclassified as such, she has not alleged that Maximus' COVID-19 policies were adverse actions, or alleged that any purportedly adverse acts were taken because of this so-called record, for the same reasons set forth in Point I(A)(3), *supra*.

## II.   PLAINTIFF'S MEDICAL PRIVACY AND CONFIDENTIALITY CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff purports to allege that Maximus violated the ADA by implementing COVID-19 safety measures, as such measures were, in Plaintiff's view, unrelated to her essential job functions, and by requiring she submit information regarding her vaccination status and/or undergo weekly testing.  We presume Plaintiff is attempting to argue that Maximus' requirement she be vaccinated or undergo COVID-19 testing was a medical examination, and thereby prohibited to the extent not job related and consistent with business necessity.  Such claim fails.  Maximus' vaccination or testing policy was, at all times relevant herein, consistent with EEOC guidance.  *See EEOC Guidance: What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEOC laws*, available at:  https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited October 19, 2022) (noting that prior to July 12, 2022, the "EEOC's assessment … was that the ADA standard for conducting

---

[17] The "transitory and minor" exception does not apply to actual disability claims.  However, to establish a "record of" claim, Plaintiff must allege a substantial limitation on major life activities.  *Kelly*, 200 F.Supp.3d at 394.  She has not.

medical examinations was, at that time, always met for employers to conduct worksite COVID-19 viral screening testing.")   Nor can Plaintiff reasonably argue that testing consumer-facing healthcare workers, who conducted in-home or in-patient health assessments, at the height of the pandemic, was not job-related and consistent with business necessity.  Finally, Plaintiff has not—nor can she—allege that any medical information was not maintained confidentially, in compliance with applicable law.  *Desano v. Blossom South, LLC*, 553 F.Supp.2d 247, 250-51 (W.D.N.Y. 2008) (to plausibly allege an employer violated the ADA's confidentially provisions, a plaintiff must claim the employer failed to keep information obtained from a valid medical examination or inquiry confidential).

### III.   PLAINTIFF'S RETALIATION CLAIM FAILS AS A MATTER OF LAW, AS PLAINTIFF HAS NOT ALLEGED A CAUSAL CONNECTION BETWEEN PURPORTED PROTECTED ACTIVITY AND ANY EMPLOYMENT ACTION.

To plead a *prima facie* case of retaliation under the ADA, Plaintiff must allege: "(i) plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Yin v. N. Shore LIJ Health Sys.*, 20 F.Supp.3d 359, 374 (E.D.N.Y. 2014).[18]   Here, Plaintiff identifies five (5) seemingly adverse actions:  she alleges Maximus removed/"blocked" her from the work schedule, reduced her hours, placed her on an unpaid leave of absence, suspended her, and ultimately terminated her employment.[19]  Even construing the facts in a light most favorable to Plaintiff, none suffice to sustain a retaliation claim, as Plaintiff has not alleged a causal connection between

---

[18] Courts in this district analyze ADA retaliation claims under the same standard as Title VII retaliation claims. *Campbell v. N.Y. City Transit Auth.* 93 F.Supp.3d 148, 175-76 (E.D.N.Y. 2015) (citing *Lovejoy-Wilson v. NOCO Motor Fule, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)).

[19] Ex. A, p. 455, ¶29; p. 457, ¶47; p. 458, ¶¶51-52.

her purported protected activity and these purportedly adverse actions.[20]

For purposes of an ADA retaliation claim, a causal connection may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotation marks omitted).  Plaintiff cannot show either.

Plaintiff alleges that Maximus announced its vaccination or testing requirement, she opposed same, and that Maximus retaliated against her for that opposition by enforcing the requirement it had already announced.  Far from pleading temporal proximity, Plaintiff alleges a timeline that precludes any finding of retaliatory intent—Plaintiff cannot plausibly allege that Maximus retaliated against her by implementing the policy it announced *before* she ever engaged in protected activity.  *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Richards v. Dep't of Educ. of N.Y.*, No. 21-cv-338, 2022 U.S. Dist. LEXIS 19674, *55, 2022 WL 329226, at *55 (S.D.N.Y. Feb. 2, 2022) ("the allegations cannot raise the inference that the allegedly retaliatory change was causally linked to Plaintiff's complaint because the change was announced *before* the complaint") (emphasis in original) (collecting cases).  Indeed, in the context of COVID-19 vaccination cases, courts have rejected retaliation claims from plaintiffs who were disciplined or terminated in accordance with the policy, when such policy was implemented *prior* to their stated objection to same.  *See Speaks*, 2022 U.S. Dist. LEXIS 146840 at *14-15 (no

---

[20] Maximus assumes for purposes of this motion only that Plaintiff engaged in protected activity; this, too, is disputed, but irrelevant to disposition of the motion.

causal connection between the plaintiff's opposition to her employer's COVID-19 vaccine policy, as "it is clear that the policy … was enacted *before* [plaintiff] spoke up in opposition") (emphasis in original); *O'Hailpin v. Hawaiian Airlines, Inc.,* 583 F.Supp.3d 1294, 1311 (D. Haw. 2022) ("the vaccine policy was established, as well as the consequences for failing to comply … *before* Plaintiffs submitted their [reasonable accommodation] requests") (emphasis in original).

Even putting aside the timing, Plaintiff alleges that the purportedly retaliatory acts were all taken because she refused to comply with Maximus' COVID-19 safety policies.  In other words, she acknowledges that Maximus took the relevant actions against her because, and only because, she refused to comply with its widely applicable COVID-19 policies.[21]  As such, she has not—and cannot—plead causation.  She does not allege that she was treated differently because she opposed the policies than she would have been had she not voiced such opposition.  Plaintiff has identified no other consumer-facing employees who did not have to comply with the COVID-19 safety measures or not subject to the same actions if they failed to do so.  To the contrary, she concedes all consumer-facing employees had to comply with the COVID-19 safety program and that any employee who refused to comply was removed from the work schedule.[22]  Nor has she alleged any direct evidence of retaliatory animus.  She simply asserts that Maximus retaliated against her.  This is not enough "[A] conclusory allegation that the action was retaliation is not sufficient under either *Twombly* or *Iqbal.*"  *Romero v. City of New York*, No. 16-cv-4157, 2016 U.S. Dist. LEXIS 146160, at *20 (E.D.N.Y. Oct. 21, 2016); *see also Together Emples. v. Mass Gen. Brigham Inc.,* 573

---

[21] Per the Amended Complaint, Maximus notified Plaintiff that all consumer-facing healthcare workers would have to be vaccinated or undergo weekly testing.  It reminded Plaintiff that if she *or anyone else on her "team"* refused, they would not be able to conduct in-person assessments.  And, when Plaintiff continued to refuse to be vaccinated or testing and remote assessments ended, Maximus removed Plaintiff from the schedule, placed her on an unpaid leave of absence, and informed her that she would remain on an unpaid leave until she agreed to comply with these safety requirements.  Ex. B, ¶¶37, 38, 42.

[22] Ex. B, ¶¶24, 42.

F.Supp.3d 412, 444 (D. Mass. 2021) (no causal connection when plaintiffs were subject to unpaid leave and potential termination because they were not approved for an exemption and remained non-compliant with their employer's vaccination policy).

Thus, Plaintiff's retaliation claim should be dismissed.

## CONCLUSION

Ultimately, Plaintiff's allegations, even when viewed in a light most favorable to her, undermine her claims.  Taking everything Plaintiff alleges as true and affording Plaintiff the deference given to those proceeding *pro se*, Plaintiff claims that Maximus implemented familiar and well-recognized safety practices to protect employees and the public from COVID-19, enforced those policies equally to all consumer-facing healthcare staff, and took action only when she refused to comply for reasons unrelated to a medical condition and without asking for an accommodation.  This is not discrimination.  This is not retaliation.  Even after an opportunity to review Defendant's initial motion and amend her Complaint, Plaintiff's allegations cannot withstand a motion to dismiss.  As such, and for the reasons set forth more fully above, the Amended Complaint should be dismissed in its entirety, any further request for leave to amend should be denied and the Court should grant any further relief as it deems just and proper.

Dated: Melville, New York
      October 20, 2022

      Respectfully submitted,

      JACKSON LEWIS P.C.
      *ATTORNEYS FOR DEFENDANT*
      58 South Service Rd., Ste. 250
      Melville, New York 11747
      (631) 247-0404

By:   *s/ Kathryn J. Barry*
      Kathryn J. Barry, Esq.
      Jenna E. Eurell, Esq.