UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                 :

**JENNIFER JOHNSON**,                   :

                  Plaintiff,     :   **MEMORANDUM DECISION**

                                 :   **AND ORDER**

        – against –      :

                               :   22-CV-2935 (AMD) (JRC)

**MAXIMUS SERVICES LLC**,     :

                               :

                Defendant.   :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff, proceeding *pro se*, alleges that the defendant violated the Americans with

Disabilities Act ("ADA") when it fired her for refusing to comply with its Covid-19 protocols.

Before the Court is the defendant's motion to dismiss the plaintiff's amended complaint for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 20.)  For the

reasons set forth below, the defendant's motion is granted.

## BACKGROUND[1]

Between April and September 2021, the plaintiff worked for the defendant as a lead nurse

evaluator and an assistant to a regional nurse manager.  (ECF No. 17-1 ¶¶ 7, 52.)  These jobs

typically involve in-person evaluations at patients' homes, but during the Covid-19 pandemic,

the defendant required its staff to conduct all appointments online.  (*Id.* ¶¶ 7–9; *see also* ECF No.

18 ¶ 11).  After the Covid-19 vaccine became available, however, the defendant notified its

employees that they would resume in-person work in September 2021.  (ECF No. 17-1 ¶¶ 14, 21,

37–38; *see also* ECF No. 21 at 3.)  The defendant also adopted new safety protocols, requiring

---

[1]  The following facts are taken from the plaintiff's amended complaint and affidavit and are accepted as
true for purposes of this motion.  *See Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

all "consumer-facing healthcare staff" like the plaintiff to get vaccinated or undergo weekly testing, and to upload those records on an app called Clear2Work.  (ECF No. 17-1 ¶¶ 12–13, 21, 50.)  The defendant allowed religious and medical exemptions and gave the plaintiff until the end of August to comply with this new policy or request an exemption.  (*Id.* ¶¶ 5, 13–14, 38, 102, 105–06; *see also* ECF No. 21 at 5.)

Because the plaintiff refused to do either, the defendant barred her from all face-to-face appointments on September 3, 2021.  When the plaintiff continued to flout the policy, the defendant placed her on an unpaid leave of absence starting September 20, 2021, and ultimately fired her.  (ECF No. 17-1 ¶¶ 18, 38, 43, 49, 52–53, 144; *see also* ECF No. 18 ¶ 46.)[2]  As the plaintiff acknowledges, the defendant made clear in all of its communications that it took those "adverse actions" solely because the plaintiff refused to comply with the Covid-19 policy.  (ECF No. 17-1 ¶ 52.)  The defendant also told the plaintiff several times that she would be reinstated to full duties if she agreed to be vaccinated or undergo weekly testing.  (*Id.* ¶ 57; *see also e.g.*, ECF No. 18 ¶ 54.)

The plaintiff filed this lawsuit on May 16, 2022, making two claims in her complaint: discrimination and retaliation in violation of the ADA.  In the first count, she alleges that the defendant applied its Covid-19 policy "in a discriminatory fashion by identifying distinct groups of employees, such as those who are 'vaccinated' and those who are 'unvaccinated' and treating them differently."  (ECF No. 17-1 ¶ 81; *see also* ECF No. 27 at 9.)  In the second, she argues that the defendant took "adverse employment actions" against her, including suspension and

---

[2] The plaintiff states in her affidavit that she "never received a termination letter from Maximus," but in the complaint and the memorandum, she claims that the defendant "terminated her employment." (*Compare* ECF No. 18 ¶ 57, *with* ECF No. 17-1 ¶ 144 *and* ECF No. 27 at 4.)  The parties do not appear to dispute that the plaintiff no longer works for the defendant.

termination, even though she "was engaged in the protected activity of refusing in good faith to participate in [the] 'Covid-19 Policy.'"  (ECF No. 17-1 ¶¶ 155, 166.)  The plaintiff also contends that the defendant (1) refused to assess "individual[ly]" whether her refusal to abide by the policy endangered herself or others, as required by the ADA (*id.* ¶ 111); (2) made improper disability-related medical examinations and inquiries (*id.* ¶¶ 89–90); and (3) violated the ADA's confidentiality provisions (*id.* ¶ 100).  Although the plaintiff does not style these arguments as separate counts in the complaint, I construe them that way because of her *pro se* status.

## STANDARD OF REVIEW

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Because the plaintiff is proceeding *pro se*, I interpret her complaint liberally and evaluate it by "less stringent standards than formal pleadings drafted by lawyers" to raise "the strongest arguments" that it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## DISCUSSION

The plaintiff has been before this Court before.  In *Johnson v. Mount Sinai Hospital Group, Inc.* ("*Johnson I*"), she brought identical discrimination and retaliation claims against

another employer, Mount Sinai, and the Court dismissed them for failure to state a claim under Rule 12(b)(6).  No. 22-CV-2936, 2023 WL 2163774, at *7 (E.D.N.Y. Feb. 22, 2023).  The doctrine of collateral estoppel thus bars the plaintiff from raising the same claims in this case.  The plaintiff's remaining claims—individualized assessment, improper medical inquiries and confidentiality—are dismissed on the merits, as discussed below.

## I.    Discrimination and Retaliation

### A.    Collateral Estoppel[3]

Collateral estoppel, also known as issue preclusion, prevents parties from "relitigating . . . an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002).  It applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) (cleaned up).

All of these prongs are satisfied here.  First, the plaintiff's discrimination and retaliation claims in *Johnson I* were based on the same facts and legal issues as the claims in this case.  In *Johnson I*, Mount Sinai implemented a Covid-19 policy that required all employees to get vaccinated or get tested weekly.  2023 WL 2163774, at *1.  It made clear that noncompliance would result in termination.  *Id*.  And it placed the plaintiff on unpaid leave and eventually fired her because she refused to comply with the policy.  *Id.*  The plaintiff argued that Mount Sinai

---

[3]  The defendant does not make a collateral estoppel argument, but "a court may raise [this issue] *sua sponte.*" *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 (2d Cir. 2020); *see also Arizona v. California*, 530 U.S. 392, 412 (2000).  The Court may also take judicial notice of the relevant pleadings, orders and judgments in the prior action on a motion to dismiss "without converting the . . . motion to one for summary judgment." *Marchon Eyewear, Inc. v. Tura LP*, No. 98-CV-1932, 1999 WL 184107, at *2 (E.D.N.Y. March 28, 1999).

discriminated against her in violation of the ADA because she was "unvaccinated." *Id.* at *3, 5. The "'defendant's 'COVID-19 Policy,'" she claimed, "made a record of" and "regarded [her] as having COVID-19 or being prone to getting infected with COVID-19," which was not true of vaccinated employees. *Id.* The plaintiff also argued that Mount Sinai punished her for "exercising her rights under the ADA to refuse in good faith the defendant's 'COVID-19 Policy' measures." *Id.* at *6. And she claimed that the "adverse employment actions" included "isolation, segregation, cancellation of shifts . . . , uncomfortable working conditions, threats of termination, and ultimately, the termination of her employment." *Id.*[4]

As for the second, third and fourth prongs, the Court gave the plaintiff a full and fair opportunity to litigate her discrimination and retaliation claims, and issued a final order on the merits, dismissing her case because she did not state a claim for either discrimination or retaliation under the ADA. In particular, the Court explained that the "plaintiff's vaccination status [is not] a disability" but "a personal choice." *Id.* (citing *Speaks v. Health Sys. Mgmt., Inc.*, No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022); *Berquist v. Lynch*, 14-CV-295, 2015 WL 4876344, at *5 (E.D. Wash. Aug. 14, 2015)). Nor can a neutral policy, applied equally to all employees, be considered discriminatory under the ADA. *Id.* at *5. With respect to the retaliation claim, the Court held that the plaintiff "cannot show a causal connection between her opposition and her termination" because "the defendant adopted its policies before

---

[4] Indeed, the plaintiff's allegations in this case appear to be lifted word-for-word from the *Johnson I* complaint. (*See, e.g.*, ECF No. 17-1 ¶¶ 85, 87, 121 (alleging that the defendant "made a record of disability by classifying the plaintiff as an 'unvaccinated employee" and that the "defendant's 'COVID-19 Policy'. . . regarded the plaintiff as having 'Covid-19' or being prone to getting infected with "Covid-19'"); *id.* ¶¶ 149, 153 (alleging that the defendant "imposed pecuniary measures and other adverse employment actions" because the plaintiff "exercised her right to refuse the defendant's 'Covid-19' Policy measures," and that those adverse actions "included the loss or threatened loss of pay, isolation, segregation, diminished employment opportunities, interference with her rights and the termination of her employment").)

the plaintiff objected to vaccinations and masking." *Id.* at *7 (relying on *Shklyar v. Carboline Co.*, No. 22-CV-391, 2022 WL 2867073, at *6 (E.D. Mo. July 21, 2022); *Speaks*, 2022 WL 3448649, at *6).  Those findings resolve the plaintiff's discrimination and retaliation claims in this case as well.

That the defendant was not a party to *Johnson I* does not preclude the application of collateral estoppel.  The Supreme Court abandoned the mutuality requirement to prevent "a plaintiff from getting a second bite at the apple merely by choosing a new adversary."  *Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005); *see also Austin v. Downs, Rachlin & Martin*, 114 F. App'x 21, 22 (2d Cir. 2004) ("[T]he doctrine of mutuality, at least for defensive use of collateral estoppel, no longer applies.").  Accordingly, collateral estoppel bars the plaintiff from re-arguing the issues of discrimination and retaliation in this case.

To be sure, this case differs from a typical collateral estoppel case for two reasons.  First, the plaintiff filed this case and *Johnson I* on the same day, so she was not necessarily looking for a second bite at the apple but for relief against two different employers.  But regardless of the plaintiff's motivations, the principles underlying collateral estoppel—to "conserve[] judicial resources" and "minimize[e] the possibility of inconsistent decisions"—apply with full force. *Montana v. U.S.*, 440 U.S. 147, 153–54 (1979).  Second, the wrongs of which the plaintiff complains arise from separate incidents and unrelated employers, which would normally require separate, fact-specific inquiries under the ADA.  However, the Court dismissed the plaintiff's claims in *Johnson I* because they were not legally cognizable under the ADA.  Under these circumstances, where the resolution of the claims hinge on "the same" legal issues and nothing more, there is no reason not to apply collateral estoppel. *Cf. Smith v. City of New York*, No. 15-CV-4493, 2016 WL 4574924, at *2, 6 (S.D.N.Y. Sept. 1, 2016) (dismissing a plaintiff's

6

challenge to a hospital's "disrobement" policy under the doctrine of *res judicata* because the court had previously determined that the policy was "not actionable under the ADA," even though the current lawsuit concerned a different incident).

## B.    The Merits of the Plaintiff's Discrimination and Retaliation Claims

Even if collateral estoppel did not preclude the plaintiff's discrimination and retaliation claims, they must be dismissed for the reasons discussed in *Johnson I*: the plaintiff does not state a cognizable claim under the ADA.

Congress enacted the ADA to provide a "clear and comprehensive national mandate to eliminate discrimination against . . . individuals [with disabilities], and to integrate them into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (cleaned up). "To effectuate its sweeping purpose," the law seeks to root out disability discrimination in various facets of public life, including housing, employment, transportation, communication and recreation. *Id.* at 675; *see also* 42 U.S.C. § 12101(a)(3). The plaintiff's complaint does not implicate the ADA. She claims that it is not "reasonable to require someone to submit to a medical treatment against her will for the prevention of a speculative illness in another person." (ECF No. 27 at 15.) "Employers do not own employees, [who] are human beings," she argues, and they "cannot ignore the medical privacy rights and rights to informed consent inherently held by . . . employees just because they are employers." (*Id.* at 34.)

First, the plaintiff has not alleged a disability. "The decision to vaccinate or not to vaccinate is a personal choice [whereas] a disability under the ADA is not something a person chooses." *Johnson I*, 2023 WL 2163774, at *6 (citing *Speaks*, 2022 WL 3448649, at *5).[5]  Nor

---

[5] In her affidavit, the plaintiff claims that she suffers from unnamed condition that "contra-indicate[s] wearing a mask or limit[s her] oxygen [because of] re-breathing . . . expelled bacteria." (ECF No. 18 ¶ 9.)  The plaintiff appears to have lifted this language from similar cases challenging Covid-19 protocols. *E.g.*, *Kosiba v. Catholic Health Sys. of Long Island, Inc.*, No. 21-CV-6416, ECF No. 39 at 2

does she sufficiently allege discrimination.  As the plaintiff concedes, the Covid-19 policy applied to all employees.  (ECF No. 27 at 9.)  The policy was "based upon the defendant's assumption that all employees have a disability" (*id.*), and the defendant imposed its "measures upon *all of [the] workers*" (ECF No. 17-1 ¶ 2).  Thus, the plaintiff admits that the defendant did not treat her differently from other employees.  *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (a plaintiff must show disparate treatment or disparate impact to state a discrimination claim under the ADA); *see also Newell v. State Univ. of New York Westchester Comty. Coll.*, No. 22-CV-08524, 2023 WL 4082030, at *4 (S.D.N.Y. June 20, 2023) (a plaintiff who "merely alleges that she was subject to the same Covid-19 protocols [as] all [other] employees" does not raise a viable allegation of discrimination).  Congress enacted the ADA to prevent workplace discrimination against employees with disabilities; it is not a device to police the general "scope of the employer-employee relationship."  (ECF No. 17-1 ¶ 16.)

Moreover, the plaintiff does not state a retaliation claim.  She alleges that the defendant suspended and fired her because she engaged in the protected activity of refusing to comply with the Covid-19 policy.  (*Id.* ¶ 149.)  To succeed on this claim, she must establish that "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (cleaned up).

---

(noting that the plaintiff alleged that he had "been diagnosed with conditions that contra-indicate wearing mask or limiting his oxygen or re-breathing his expelled bacteria" (cleaned up)).  As in those cases, the plaintiff provides not "a single detail" about this condition, *id.* at 13; indeed, she does not even mention it in her complaint or her memorandum.  Moreover, an inability to wear a mask does not bear on the plaintiff's claims about vaccination and testing.  The plaintiff therefore cannot state a claim based on any such impairment.

Even assuming that the plaintiff's opposition to the Covid-19 policy was protected activity, she cannot show causation.  As in *Johnson I*, the defendant merely enforced its policy, which it adopted before the plaintiff voiced any opposition to it.  *See* 2023 WL 2163774, at *7 ("Given that the adverse action taken against [the plaintiff] was taken pursuant to policies that were implemented before [she] engaged in her alleged protected activity, it is not reasonable to infer that there was a causal connection between the two events." (quoting *Shklyar*, 2022 WL 2867073, at *6)).  Moreover, the plaintiff was subjected to "adverse employment actions" because she refused to comply with the Covid-19 policy, not because she opposed it.  As the plaintiff admits, the defendant told her that she could resume working if she followed the policy. (ECF No. 17-1 ¶ 57 ("[Human Resources] stated that the plaintiff would remain on unpaid leave until she agreed to comply with the company's policy.").)  Because the "ADA is not a license for insubordination [in] the workplace," *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 262 (1st Cir. 2001), the plaintiff's retaliation claim must be dismissed.[6]

## II.   Remaining ADA Claims

The plaintiff brings three other claims under the ADA: (1) the defendant declined to conduct an "individualized assessment" to determine whether her refusal to vaccinate or test posed a "direct threat;" (2) the defendant's policy called for prohibited medical inquiries and examinations under the ADA; and (3) the policy violated the ADA's confidentiality provisions. (ECF No. 17-1 ¶¶ 89–100, 111.)

---

[6] In any event, the defendant did not suspend or fire the plaintiff because she was unvaccinated but because she refused to undergo weekly testing.  The plaintiff does not claim that the testing requirement was retaliatory or discriminatory.  *See Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (a plaintiff claiming disability discrimination under the ADA must allege, among others, that "the adverse action was imposed because of her disability").

The plaintiff cannot succeed on these allegations.  The ADA's "direct threat provision" does not impose an affirmative duty on employers; it simply provides a defense for employers once a plaintiff has established that she has a disability.  42 U.S.C. § 11213(b).  Because the plaintiff did not "allege facts showing that she is an individual with a disability," the direct threat provision is "inapplicable" in this case.  *Librandi v. Alexion Pharms., Inc.*, No. 22-CV-1126, 2023 WL 3993741, *at 10 (D. Conn. June 14, 2023) (cleaned up); *see also Sharikov v. Philips Med. Sys. MR, Inc.*, No. 22-CV-00326, 2023 WL 2390360, at *17 (N.D.N.Y. Mar. 7, 2023).  In any event, it would have been "reasonable for [the defendant] to conclude that unvaccinated employees—who are more likely to become infected—pose a direct threat to patients and others." *Together Emps. v. Mass Gen. Brigham, Inc.*, 573 F. Supp. 3d 412, 433 (D. Mass. 2021); *see also West v. Scott Lab'ys, Inc.*, No. 22-CV-07649, 2023 WL 2632210, at *5 n.7 (N.D. Cal. Mar. 24, 2023) (similar).

The plaintiff's medical-inquiries and examinations claim is similarly meritless.  The ADA generally forbids employers from asking questions that are "likely to elicit information about a disability" and from requiring employees to undergo medical procedures "that seek[] information about [their] physical or mental impairments or health."  *Sharikov*, 2023 WL 2390360, at *15 n.8 (internal citations omitted); *see also* 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.13(b).  "[W]hether a particular examination or inquiry falls within [this statute] depends on whether it 'may tend to reveal a disability.'"  *Medlin v. Rome Strip Steel Co.*, 294 F. Supp. 2d 279, 294 (N.D.N.Y. 2003) (quoting *Conroy v. N.Y. State Dep't of Corr. Serv.*, 333 F.3d 88, 95 (2d Cir. 2003)).  The only things the defendant's policy could reveal were the plaintiff's vaccination status or a temporary Covid-19 infection, neither of which is a disability under the ADA.  *See supra* Part I.B (explaining why vaccination status does not qualify as a disability); 42

U.S.C. § 12102(3)(B) (clarifying that individuals are not "disabled" for purposes of the ADA when they have "transitory and minor" illnesses).  Other courts have accordingly rejected similar challenges to employers' Covid-19 policies.  *See, e.g.*, *Chancey v. BASF Corp.*, No. 3:22-CV-34, 2022 WL 18438375, at *4 (S.D. Tex. Dec. 29, 2022).

Even if the defendant's policy required disability-related examinations or inquiries, the ADA permits "such examination or inquir[ies]" as long as they are "job-related and consistent with business necessity."  42 U.S.C. § 12112(d)(4)(A).  The defendant's efforts to prevent the spread of a highly transmissible disease in its workplace and in patients' homes, and to adhere to federal Covid-19 guidance, plainly fell within that exception.  *See Sharikov*, 2023 WL 2390360, at *16.

Finally, the defendant did not disregard the ADA's confidentiality mandate.  The ADA provides that "[i]nformation . . . regarding the medical condition or history of any employee" that is obtained from a medical inquiry or examination must be "collected and maintained on separate forms and in separate medical files and [] treated as a confidential medical record."  42 U.S.C. § 12112(d)(3)–(4); 29 C.F.R. § 1630.14(c).  The plaintiff does not allege any facts suggesting that the defendant improperly disclosed her medical information.[7]  (ECF No. 21 at 22.)  In any event, as discussed above, the plaintiff did not "suffer from a disability within the meaning of the ADA," so "the ADA's non-disclosure duty was not triggered."  *Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 334 (N.D.N.Y. 2010).

---

[7]  The plaintiff summarily claims that the defendant's policy "involve[d] sharing non-job-related medical classifications (e.g. 'vaccination status,' vital statistics and 'PCR' testing history)" and had no "provision[s] to preserve the medical privacy of any employee, including the plaintiff's."  (*Id.* ¶ 100 (footnote omitted).)

The plaintiff's claims regarding individualized assessment, improper examinations and inquiries and confidentiality are therefore dismissed.

## III.  Amendment

As a general matter, federal courts should "liberally permit pro se litigants to amend their pleadings." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  However, "leave to amend need not be granted when amendment would be futile." *Id.* (citing *Cuoco*, 222 F.3d at 112).  The plaintiff has already amended her complaint once in this case, and she can plead no facts that would overcome the legal deficiencies discussed above.  Moreover, the Court dismissed essentially identical claims in *Johnson I*.  The complaint is therefore dismissed with prejudice.

## CONCLUSION

The complaint is dismissed with prejudice as collaterally estopped and for failure to state a claim.  The Clerk of Court is respectfully directed to close this case and enter judgment.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk is also respectfully directed to mail a copy of this Order to the plaintiff at the address she provided and note the mailing on the docket.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        August 30, 2023

12